Anvaer v Anvaer (2018 NY Slip Op 02590)





Anvaer v Anvaer


2018 NY Slip Op 02590


Decided on April 18, 2018


Appellate Division, Second Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided on April 18, 2018
SUPREME COURT OF THE STATE OF NEW YORK
Appellate Division, Second Judicial Department

MARK C. DILLON, J.P.
ROBERT J. MILLER
BETSY BARROS
LINDA CHRISTOPHER, JJ.


2016-11003
 (Index No. 50143/10)

[*1]Vadim Anvaer, appellant, 
v
Ludmila Anvaer, respondent.


Yelena Sharova, Brooklyn, NY, for appellant.
Gary Schultz, New York, NY, for respondent.



DECISION & ORDER
In an action for a divorce and ancillary relief, the plaintiff appeals from a judgment of the Supreme Court, Kings County (Michele M. Woodard, Ct. Atty. Ref.), dated August 25, 2016. The judgment, insofar as appealed from, determined issues of equitable distribution of marital property, and awarded the defendant the principal sum of $294,232.88.
ORDERED that the judgment is affirmed insofar as appealed from, with costs.
In this divorce action, the Supreme Court referred the matter to a special referee to hear and report with recommendations on the issues of whether (1) a corporate asset located outside of the United States existed; (2) that asset constituted marital property subject to equitable distribution; and (3) such asset was "disposed of or transferred by a party in contemplation of this matrimonial action." At the evidentiary hearing, the defendant sought to establish that the plaintiff was the director of System and System Corp. (hereinafter the corporation), that the corporation was a marital asset subject to equitable distribution, and that the plaintiff had been secreting the corporation's assets in order to deprive the defendant of her equitable share of marital property. She introduced evidence that she found in the plaintiff's possession: the corporation's corporate stamp and certificate of incorporation. The defendant also presented a letter from FBME Bank, Ltd. (hereinafter the bank), which is located in Cyprus, showing that, as of May 5, 2009, the corporation's account had a balance of $588,465.75, and bank statements showing that by August 31, 2009, the balance had decreased to $46,705.46.
The plaintiff testified that the bank's letter was sent to him at the behest of a family friend in order to verify the ability of the corporation to complete a short sale of the marital residence, which was in foreclosure. The Special Referee found that the plaintiff's testimony was not supported by the record, and that he offered no credible evidence to explain why the corporation's documents and stamp were in his possession. Moreover, the plaintiff admitted that he had sent and received emails on the corporation's behalf. The defendant presented evidence that the emails listed the plaintiff as the corporation's "Senior Director."
In the Report and Recommendation After Trial on Framed Issue Hearing, the Special Referee determined that the corporation existed, and that it was marital property subject to equitable distribution. The Special Referee found that the corporation was incorporated in the British Virgin Islands on February 22, 2008, and maintained a bank account at FBME Bank in Cyprus. She determined that the current value of the asset could not be determined, but that the balance in the corporation's bank account decreased from $588,465.75 on May 8, 2009, to $46,705.46 during the period from August 1, 2009, to August 31, 2009. She further determined that the plaintiff was the director of the corporation, and was secreting the corporate assets to keep them away from the defendant. The Special Referee found that a proposed sale of the marital residence to the plaintiff's friend for the sum of $250,000, an amount far below the property's value, supported the defendant's claim that the sale, including the involvement of the corporation, was a "scheme" to divest the defendant of her interest in the marital residence. The Special Referee's determination was confirmed by the Supreme Court. Thereafter, the remaining issues relating to equitable distribution were tried before a court attorney referee, who took judicial notice of the prior confirmed determinations of the Special Referee. In her Memorandum Decision, the Court Attorney Referee noted that the Special Referee "already determined that [the corporation] was marital property," and only left open the issue of the value of the corporation. In determining the corporate value, the Court Attorney Referee relied, in part, upon the plaintiff's failure to respond to a notice to admit regarding the authenticity of certain FBME Bank documents which reflected the corporation's value as of May 8, 2009, and that such value, according to the admitted bank records, was $588,465.75. The Court Attorney Referee further determined that the plaintiff intentionally depleted the corporation's account for purposes of depriving the defendant of that money at a time when the marriage was breaking down and divorce was imminent. She noted that, "[b]ased upon the Plaintiff's admission, [it] can [be] infer[ed] that the breakdown in the marriage occurred as early as 2006 in the Plaintiff's mind and that the Plaintiff began depleting assets thereafter." Under the circumstances, the Court Attorney Referee concluded that the valuation date for the corporation would be May 8, 2009, as the depletion of assets in May 2009 "was not so remote in time" from the filing of the action as to warrant a different conclusion. The judgment, inter alia, awarded the defendant the sum of $294,232.88, representing one-half of the value of the corporation's account as of May 8, 2009. The plaintiff appeals.
" As a general rule, courts will not disturb the findings of a referee as long as they are substantially supported by the record and the referee has clearly defined the issues and resolved matters of credibility. A referee's credibility determinations are entitled to great weight because, as the trier of fact, he or she has the opportunity to see and hear the witnesses and to observe their demeanor'" (Colacino v Colacino, 152 AD3d 486, 487, quoting Last Time Beverage Corp. v F & V Distrib. Co., LLC, 98 AD3d 947, 950). " The trial court is vested with broad discretion in making an equitable distribution of marital property . . . and unless it can be shown that the court [*2]improvidently exercised that discretion, its determination should not be disturbed'" (Gafycz v Gafycz, 148 AD3d 679, 680, quoting Halley-Boyce v Boyce, 108 AD3d 503, 504; see Nadasi v Nadel-Nadasi, 153 AD3d 1346, 1348). In making a determination of equitable distribution, a court may properly consider a finding that a party secreted assets, willfully failed to comply with court orders, or was deliberately evasive during testimony (see Gafycz v Gafycz, 148 AD3d at 680; Kerley v Kerley, 131 AD3d 1124, 1126; Coleman v Coleman, 284 AD2d 426).
Here, given the Supreme Court's credibility determination rejecting the plaintiff's denial of affiliation with the corporation and its finding that the plaintiff secreted the existence of the corporation and depleted its value at a time when the marriage was breaking down, the court providently exercised its discretion in awarding the defendant the sum of $294.232.88, which was the documented value of the corporation as of May 2009, and was some evidence of the corporate value as of the time of commencement. The Supreme Court's credibility determinations are entitled to deference, and will not be disturbed under the facts of this case.
The plaintiff's remaining contention is without merit.
DILLON, J.P., MILLER, BARROS and CHRISTOPHER, JJ., concur.
ENTER:
Aprilanne Agostino
Clerk of the Court